## Strange v. Commonwealth.

(Decided April 24, 1934.)

T. C. CARROLL and J. F. COMBS, for appellant.

BAILEY P. WOOTTON, Attorney General, DAVID C. WALLS, Assistant Attorney General, E. W. CREAL, and A. E. FUNK, Jr., for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Reversing.

Appellant, W. R. Strange, tried under an indictment charging him with the crime of murder, was convicted of manslaughter and sentenced to a term of three years in the penitentiary.

On this appeal he urges two grounds for a reversal of the judgment: (1) The verdict is not sustained by the evidence and (2) the instructions are erroneous. The determination of ground 1 relied on for a reversal of the judgment necessitates a brief summary of the evidence at the trial.

Appellant is the son of Mrs. Mary C. Strange, and, with his wife and twelve year old son, lives with his mother on the latter's farm. Orvil Devore was a tenant on the farm of Mrs. Mary C. Strange, and lived about four hundred or five hundred yards from the Strange home. On Friday night, July 14, 1933, Devore went to the Strange home to collect $2.60 which he claimed was due him for labor performed during the preceding week. Devore testified that appellant told him he did not have the change, but would pay him on the following day. On Saturday morning he returned,

and was informed that W. R. Strange was not at home. About 2 o'clock on Saturday afternoon, accompanied by his brother-in-law, Otis Spurling, and John Burks, he again went to the home of Mrs. Mary C. Strange, and was again informed that W. R. Strange was not at home. At about 8 o'clock Saturday night he and Otis Spurling again appeared at the Strange home, and Devore asked to see appellant. He was told by one of the women that appellant was busy and could not see him. He and Spurling walked to a spring nearby, procured a drink of water, and, as they were returning through the yard, Devore testified that appellant met them and asked them what they wanted. Devore told him he wanted the money that was due him, and appellant handed him $2, and then ordered Spurling and Devore to leave the premises. A few words passed between them, when appellant drew a knife. Spurling and Devore passed through a gate into the barn lot. Appellant went into the house, procured a shotgun, and followed them, and again ordered them to leave the premises. Spurling walked three or four steps toward appellant and said:

> "I am going off your place. You don't need to shoot us. I don't want to have no trouble but you are not going to shoot us."

Appellant fired twice, the second shot striking Spurling in the head and killing him instantly. He then turned and shot Devore, but did not wound him seriously. Appellant testified that, after he had paid Devore, he heard Spurling and Devore, as they were leaving, threaten to burn the barn. They went toward the barn, and, believing that they were going to carry out their threat, he went into the house, procured a shotgun, and followed them. When he ordered them to leave the premises, Spurling started toward him, and appellant fired once into the ground. Spurling continued to advance with his hand on his pocket, and, believing that he was in danger of serious injury at the hands of Spurling, he fired a second time, but without intending to kill Spurling. Appellant's mother had followed him into the barn lot and was present when the shooting occurred. She corroborated her son. The testimony of Devore as to what occurred earlier in the day was contradicted in some respects by disinterested witnesses, and it is argued that this shows he is not worthy of belief, and that his version of what occurred at and just before the shooting is not sufficient to sustain the verdict. If what

he stated was true, the shooting was unjustified and appellant escaped with a light sentence.

Whether the testimony of Devore or that of appellant and his mother should be believed was a question essentially for the determination of the jury, and we cannot say that its verdict accepting the testimony of the prosecuting witness in preference to that of appellant and another is flagrantly against the evidence. If there is any evidence affording reasonable ground on which the verdict might be sustained, it is not flagrantly against the evidence, though the conviction rests on the testimony of a single witness. Little v. Commonwealth, 246 Ky. 805, 56 S. W. (2d) 526; Mullins v. Commonwealth, 246 Ky. 748, 56 S. W. (2d) 370; Hudson v. Commonwealth, 227 Ky. 831, 14 S. W. (2d) 146; Watson v. Commonwealth, 132 Ky. 46, 116 S. W. 287.

It is next insisted that the instructions given by the court were so confusing that the appellant did not receive the full benefit of the reasonable doubt to which he was entitled. Instruction No. 1 reads:

"If the jury believe from the evidence beyond a reasonable doubt that in this county before the finding of this indictment the defendant, W. R. Strange shot Otis Spurling with a shotgun so that he then and there died from such shooting, you should find him guilty; guilty as charged in the indictment if such shooting was done wilfully, feloniously and with malice aforethought; guilty of voluntary manslaughter if such shooting was done in sudden afffay, or in sudden heat and passion on a provocation reasonably calculated to incite the defendant's passion beyond the power of his control."

This instruction would be in more approved form if the phrase "if the jury believes from the evidence beyond a reasonable doubt" had been repeated in the last two clauses. However, the Attorney General argues that when it is read in connection with the other instructions which were given, the jury necessarily must have understood that, before they could find the appellant guilty of voluntary manslaughter, they must believe from the evidence beyond a reasonable doubt that the shooting was done in sudden affray or in sudden heat and passion on a provocation reasonably calculated to excite the appellant's passion beyond his power of control and the idea that the jury must "believe from

the evidence beyond a reasonable doubt'' carries through the entire intruction. Appellant admitted the shooting, but denied that he shot at the deceased willfully, feloniously, or maliciously with the intention of killing him.

The instructions authorized the jury to find him guilty if they believed from the evidence beyond a reasonable doubt that he shot the deceased—a fact not disputed. In addition to the failure to incorporate in the part of the instruction defining manslaughter the idea of reasonable doubt, the jury were not required to believe that the, shooting was willfully or feloniously done. In the preceding clause they were authorized to find him guilty of murder if the shooting was done willfully, feloniously, or with malice aforethought, but he was not convicted under that clause and it may be eliminated. With it eliminated the instruction reads:

"If the jury believe from the evidence beyond a reasonable doubt that in this county before the finding of this indictment the defendant, W. R. Strange shot Otis Spurling with a shotgun so that he then and there died from such shooting, you should find him guilty of voluntary manslaughter if such shooting was done in sudden affray, or in sudden heat and passion on a provocation reasonably calculated to incite the defendant's passion beyond the power of his control.''

Since appellant admitted the killing, this instruction required the jury to find him guilty of manslaughter regardless of whether or not they believed from the evidence beyond a reasonable doubt that the shooting was willfully and feloniously done.

Instructions on murder and manslaughter are frequently incorporated in one instruction as here, but it is better practice to give separate instructions.

Instruction No. 4 reads:

"If you have a reasonable doubt defendant has been proven guilty, you should find him not guilty; but if you believe from the evidence beyond a reasonable doubt he has been proven guilty and have a reasonable doubt as to the degree of his guilt, you should find him guilty of the lower, voluntary manslaughter.''

The latter part of instruction No. 4 is criticized,

but it is substantially in the form that has been approved by this court. Burns v. Commonwealth, 136 Ky. 468, 124 S. W. 409; Beaty v. Commonwealth, 140 Ky. 230, 130 S. W. 1107.

We are of the opinion that instruction No. 1 in the form given was prejudicially erroneous, and for that reason the judgment is reversed, with directions to grant appellant a new trial and for further proceedings consistent herewith.