## Little v. Commonwealth.

(Decided Jan. 17, 1933.)

KASH C. WILLIAMS for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Appellant, Floyd Little, seeks the reversal of a judgment convicting him of assault with intent to rob, and fixing his punishment at 10 years' imprisonment.

The first error relied on is that the verdict is flagrantly against the evidence. Bruce Marcum, the prosecuting witness, testified in substance as follows: He had been in the habit of visiting some relatives, who lived near the White Pine School House, in Breathitt county, and was on his way to see them. En route he stopped at the home of Alfred McIntosh, with whom he had hunted ground hogs. While there he saw appellant and his companion, Kelly Spencer, and left the McIntosh place. As he passed the home of Wiley Morris he saw appellant standing there. He then went around the point and before he could "top the point" appellant and Kelly Spencer approached in a run and said, "Wait there, where are you going?" They each had their guns in their hands, and Kelly said, "Do you know we are in the habit of making men do what we please in this country?" He said, "Boys, you don't have to make me do anything. If I had anything I would give it to you." They then told him that they were going to rob him, and punched him with their pistols. They further told him that they were going to kill him, and if he did not have anything they were going to kill him anyway. They searched him and turned his pockets wrong side out. Kelly then grabbed his hat. He then told them that he had a half gallon of liquor hid under an old tree, and they finally agreed to turn him loose, with the understanding that he would come back with the half gallon of liquor. They then put up their pistols and he left and did not return. He did not have any liquor, but told them that to save his life, and thought that he used pretty good judgment. Mrs. Wiley Morris testified that appellant was sitting on her porch, and, speaking of Bruce Marcum, said that he was going to get his pistol, and if he had anything and did not give it up he would kill him. On the other hand, appellant denied Marcum's account of the affair, and testified that, when he and Kelly Spencer got up with Marcum, Kelly put his hand on Marcum's shoulder and asked him if he had any liquor. Marcum said, "No, I have not got a drop. If I did I would give it to you." Marcum then said, "I have a half gallon paid for, if you will wait here. If you don't believe I will come back, I will let you hold my hat." They waited about

20 minutes, and then left. He never had any pistol and never jabbed him with a pistol. He knew that Marcum did not have anything, and did not try to put his hands in his pockets. Marcum was a harmless sort of a man, and was never known to have any money.

It is argued that the only purpose of appellant and Spencer was to try to get Marcum to give them some liquor, and that it is inconceivable that, if appellant intended to rob Marcum, he would announce his intention to others, and then attempt to carry it out. The argument is one that might have been, and doubtless was, addressed to the jury. It is not so persuasive that we can say that the verdict is flagrantly against the evidence. Marcum's evidence makes out a clear case of assault with intent to rob. The only evidence to the contrary is that of appellant. The credibility of the witnesses was for the jury, and in no case have we ever held a verdict flagrantly against the evidence merely because the jury believed the prosecuting witness rather than the accused.

Mrs. Maggie Little, appellant's mother, testified that appellant was born September 4, 1915, but admitted that she always gave her children's names to the census enumerator. Afterward the court permitted an employee in the office of the county superintendent, who is required by law to keep the school census, to produce the record and testify that it showed that appellant was born on September 24, 1913. As the record, though not admissible as substantive evidence, was admissible for the purpose of contradicting Mrs. Little, who furnished the census enumerator with the facts, and the court so admonished the jury, the admission of the evidence was not error. Hunley v. Commonwealth, 217 Ky. 675, 290 S. W. 511.

The further point is made that the court erred in refusing to instruct on assault and battery. Assault and battery is a degree of the crime of assault with intent to rob, and an instruction on assault and battery should be given when authorized by the evidence. Barnard v. Commonwealth, 94 Ky. 285, 22 S. W. 219, 15 Ky. Law Rep. 51. The commonwealth insists that the facts bring the case within the rule announced in Seeley Herron v. Commonwealth, 247 Ky. 220, 55 S. W. (2d) — . In that case all the evidence showed that the assault, if made, was solely for the purpose of robbery,

and that appellant was either guilty of assault with intent to rob, or was not guilty. Here there was some evidence of an assault, accompanied by the evidence of appellant that he and his companions had no intention whatever of robbing Marcum. In view of this situation we are constrained to the view that an instruction on assault and battery should have been given. Barnard v. Commonwealth, supra.

Although the indictment was not demurred to, or assailed in any other way, we deem it proper, in view of another trial, to call attention to the indictment and the instruction. The indictment was drawn for the purpose of charging the offense denounced in section 1160, Kentucky Statutes, which reads as follows:

"If any person, with an offensive weapon or instrument, shall unlawfully and maliciously assault, or in or by any forcible and violent manner, demand any money, goods or chattels, bond bill, deed or will, or other evidences of right, or other thing of value of or from any other person, with an intent to rob or commit a robbery upon such person, he shall be confined in the penitentiary not less than five nor more than twenty years."

Though the statute was differently construed in Chappell v. Commonwealth, 200 Ky. 429, 255 S. W. 90, we have recently overruled that case, and returned to the former rule that the statute does not contain two offenses, but prescribes only one offense, which may be committed in two different ways, and that under the first provision the crime consists in the commission of an unlawful and malicious assault with an offensive weapon or instrument, with the felonious intent to rob the person assaulted, while under the second provision the gravamen of the offense is the act of demanding money or property in a forceable and violent manner with the intent to rob. Taylor v. Commonwealth, 3 Bush, 508. Here the indictment reads as follows:

"The Grand Jury of Breathitt County, in the name and by the authority of the Commonwealth of Kentucky accuse Floyd Little and Kelly Spencer of the crime of an assault with intent to rob committed in the manner and form as follows towit:

"The said defendant in the county of Breathitt on the 18th day of July, 1932, and within twelve

months before the finding of this indictment, did unlawfully, willfully, feloniously, forceably, assault Bruce Marcum and did attempt to rob against his will by force and by putting him in fear contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the Commonwealth of Kentucky.''

It will be observed that the indictment does not charge either that the assault was with an offensive weapon or instrument, or that the defendant by any forceable and violent manner demanded any money or other property with the felonious intent to rob. Notwithstanding the absence of these allegations from the indictment, the court, by its instruction, submitted to the jury both the question of felonious assault with an offensive weapon with intent to rob, and the question of demanding money or other things of value with intent to rob, without requiring that the demand be in a forceable and violent manner. In the latter respect the instruction is not correct, and it may be doubted if the indictment was sufficient to authorize an instruction on either phase of the crime. In the circumstances, the commonwealth should resubmit the case to another grand jury, and procure an indictment conforming to the provisions of the statute.

Judgment reversed, and cause remanded for proceedings not inconsistent with this opinion.